## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANNA MARIE VON,              )
              **Plaintiff,**    )
                       )
             **v.**           )   **2:14-cv-00177-TFM**
                       )
**CAROLYN W. COLVIN**,    )
ACTING COMMISSIONER OF   )
SOCIAL SECURITY,        )
              **Defendant.**

## MEMORANDUM OPINION

February 10, 2015

### I.      Introduction

Anna Marie Von ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1383(c)(3) for judicial review of the decision of the Commissioner of Social Security ("Commissioner"), which denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403, 1381-1383(f). The parties have filed cross-motions for summary judgment (ECF Nos. 8, 10), which have been fully briefed (ECF Nos. 9, 11) and, accordingly, are ripe for disposition. For the following reasons, Plaintiff's motion will be **GRANTED**, and the Commissioner's motion will be **DENIED**.

### II.     Background

Plaintiff was born on August 17, 1961.[1] (R. 46). She left high school in the tenth grade, and has past relevant work experience as a fast food worker and assistant manager. (R. 46). She has not, however, engaged in substantial gainful activity since her amended alleged onset date of

---

1.     As of her alleged onset date, Plaintiff was 49 years old, making her a "younger person" under the regulations. 20 C.F.R. § 404.1563(c). However, on August 16, 2011, she turned 50 years old, and thus she became a "person approaching advanced age." *Id.* § 404.1563(d).

March 26, 2010. (R. 23, 28).

**A. Medical Evidence**

Plaintiff has been treating with her primary care physician, Dr. John Kalata ("Dr. Kalata, Jr.")[2] since before her amended alleged onset date. The record from that period demonstrates that Plaintiff has a history of anemia, for which she required three blood transfusions, and low back pain, which was treated with pain medications and muscle relaxers.

Shortly after Plaintiff's amended alleged onset date, in early April 2010, Dr. Kalata, Jr. diagnosed Plaintiff with chronic lower back pain and anemia. (R. 355). On April 8, 2010, Plaintiff underwent an MRI of her lumbar spine. (R. 440). The MRI revealed degenerative disc disease at L4-L5 and chronic stable perineural cysts in the sacral recess (R. 440).

In August 2010, Plaintiff was referred to an orthopedist for physical therapy. (R. 358). She attended an evaluation with the physical therapist on September 20, 2010, and was scheduled to undergo therapy twice a week for four to six weeks. (R. 483). However, she was discharged on October 1, 2010, with the therapist noting that Plaintiff "subjective [complaints are] inconsistent [with] objective findings" and that she had "poor rehab potential." (R. 483). It was further noted that Plaintiff "demonstrates positive Waddell signs indicating abnormal illness behavior and signs of poor sincerity of effort." (R. 483). At the time of her discharge, Plaintiff maintained that her symptoms were unchanged and that she experienced severe pain for two days following each therapy session (R. 483, 487).

Following her brief stint in therapy, Plaintiff continued to see Dr. Kalata, Jr. for her back

2.     Dr. Kalata, Jr.'s treatment notes are largely illegible, so the Court has relied extensively on the parties' representations as to what these notes say in rendering its decision. Furthermore, the Court notes that Plaintiff's primary care physician, Dr. Kalata, Jr. is the son of the consultative examiner, who shares the same name. To avoid confusion, the Court will refer to Plaintiff's primary physician as "Kalata, Jr." and the consultative examiner as "Kalata, Sr."

pain. In November 2010, she was diagnosed with fibromyalgia and prescribed Savella. (R. 474). The next month, Plaintiff reported that the Savella "helped a great deal." (R. 474). Plaintiff continued to receive routine medication management from Dr. Kalata, Jr. throughout the rest of 2010-2011 until around the time of her administrative hearing in 2012. She was prescribed Vicodin, for pain, as well as a number of other medications. During that time period, she continued to complain of back pain. (R. 471-474). At various points, she also complained of shoulder and knee pain, though these conditions eventually subsided. (R. 469-493).

### B.    Opinion Evidence

On November 22, 2010, Dr. John Kalata, Sr. ("Dr. Kalata, Sr.) conducted a physical consultative examination at the behest of the state agency. (R. 451). At the time, Plaintiff's chief complaint was chronic back pain. (R. 451). Dr. Kalata, Sr. noted that Plaintiff had complained of experiencing back pain since the age of 24, and since that time, she had suffered several back injuries. (R. 451). Upon examination, Plaintiff did not display any edema or calf tenderness. (R. 454). However, diminished lumbar lordosis, tenderness in the bilateral lumbar paraspinal muscles, and tenderness over the sacroiliac joints were noted. (R. 454). Plaintiff also displayed positive signs in 10 out of the 18 fibromyalgia tender points. (R. 454). Moreover, her cranial nerves were grossly intact and her deep reflexes were +2/4 in the upper and lower extremities bilaterally. (R. 454). Her sensation was intact in all four extremities, and she had 4/5 strength in her hip flexors and extensors, as well as her knee flexors and extensors. (R. 454). Dr. Kalata, Sr. observed that pain limited Plaintiff's motion. (R. 454). Straight leg raising was negative, and Plaintiff could not heel walk. (R. 454). Based upon his examination, Dr. Kalata, Sr.'s impressions were: (1) chronic lumbar pain likely secondary to degenerative disc disease, possible lumbar radiculopathy; (2) probable fibromyalgia; (3) chronic anemia; (4) previous history of

metromenorrahagia, now status post hysterectomy; (5) lower extremity weakness, likely secondary to low back pain; (6) hypertension; (7) dyslipidemia; (8) diminished visual acuity bilaterally; and (9) poor dentition. (R. 455).

Following his examination, Dr. Kalata, Sr. completed a medical source statement, in which he opined that Plaintiff could frequently lift and carry two to three pounds and occasionally lift and carry 10 pounds. (R. 444). He also opined that Plaintiff could stand and walk one to two hours in an eight-hour workday, and sit three to four hours a day, with frequent breaks and leaning. (R. 444). Furthermore, he found that Plaintiff was limited in pushing and pulling in her lower extremities, could occasionally engage in all postural activities except balancing and climbing, and could not reach. (R. 444-45). Several environmental restrictions were also noted. (R. 445).

Dr. Kalata, Jr. completed his own medical source statement on March 19, 2012. (R. 490-92). He opined that Plaintiff could occasionally lift and/or carry 10 pounds and frequently carry less than 10 pounds. (R. 490). He also noted that Plaintiff could stand/walk for two hours in an eight-hour work day with frequent breaks and sit two hours in a workday, though she would be required to periodically alternate between sitting and standing every 30 minutes to relieve pain or discomfort, which would cause her to be off task for about two to four minutes each time. (R. 491). According to Dr. Kalata, Jr., Plaintiff's ability to push and/or pull in her lower extremities was limited; however, she did not have any manipulative limitations. (R. 491). In addition, he noted, Plaintiff could never climb, crouch, or crawl, but she could occasionally engage in the other postural activities (i.e., balancing, kneeling, and stooping). (R. 491). In closing, Dr. Kalata, Jr. opined that Plaintiff would be likely to call off work 2 days per week and would be unable to work a full, eight-hour day three days per week due to her conditions. (R. 492). She would also

require one to four breaks in excess of five to ten minutes throughout a workday. (R. 492).

### C.    Procedural History

Plaintiff protectively filed applications for DIB/SSI on June 17, 2010, alleging disability as of May 5, 2009, due to anemia, two perforated discs, and numbness in her legs. (R. 192-200, 228). After Plaintiff's claims were denied at the administrative level, she requested a hearing, which was held on May 9, 2012, before Administrative Law Judge David F. Brash ("ALJ"). At the hearing, Plaintiff's alleged onset date was amended to March 26, 2010, since she had a prior unfavorable decision dated March 25, 2010. (R. 65, 71-81). Plaintiff was represented by counsel and testified at the hearing, as did an impartial vocational expert. (R. 36-68).

On May 22, 2012, the ALJ rendered a partially favorable decision to Plaintiff. (R. 17-31). In rendering his decision, the ALJ found that Plaintiff has the following severe impairments: lumbar annual bulge and tear, fibromyalgia, anemia, and obesity. (R. 24). None of those impairments, however, met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). Accordingly, the ALJ went on to assess Plaintiff's residual functional capacity ("RFC"). (R. 25). Based on his review of the objective medical evidence and the opinion evidence of record, along with Plaintiff's subjective complaints regarding her conditions, the ALJ found that Plaintiff retained the RFC to perform sedentary work, with the following additional limitations: she cannot push/pull with her legs and she can occasionally operate foot controls, bilaterally; she may never crawl or climb ladders, ropes, or scaffolds; she could occasionally climb ramps and stairs, balance, stoop, kneel, or crouch; and she must avoid even moderate exposure to heights, dangerous machinery, and similar hazards. (R. 35). Based on the VE's testimony, the ALJ concluded that, prior to August 17, 2011 – the date Plaintiff's age category changed to "person approaching advanced age" – a significant number of jobs existed

in the national economy for someone with Plaintiff's age, education, work experience and RFC – namely, "surveillance system monitor," "credit checker," and "bench assembler." (R. 30). However, the ALJ found that Plaintiff's change in age category on her 50th birthday directed a finding of disabled as of that date, through the application of Grid Rule 201.10.[3] (R. 30).

The ALJ's decision became the final decision of the Commissioner on May 2, 2014, when the Appeals Council denied Plaintiff's request for review. (R. 1-5). On July 2, 2014, Plaintiff filed her Complaint in this Court, in which she seeks judicial review of the decision of the ALJ. The parties' cross-motions for summary judgment then followed.

## III.   Legal Analysis

### A.   Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g)/1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test

---

3.      Grid Rule 201.10 directs a finding of disabled if a claimant is (1) closely approaching advanced age, (2) has limited education, (3) and has no transferable job skills. 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, Rule 201.10.

[whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. *Compare* 20 C.F.R. § 416.920 *with* § 404.1520."); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II [DBI] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating that a claimant's burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2)

in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

## B. Discussion

Plaintiff argues that the ALJ committed two errors in concluding that she was not disabled prior to her 50th birthday on August 17, 2011. First, she contends that the ALJ erred in rejecting the opinions of her treating physician, Dr. Katala Jr., and the consultative examiner, Dr.

Katala, Sr. According to Plaintiff, because these opinions were the "only evidence in this case," they had to be adopted by the ALJ when assessing Plaintiff's RFC, and had they been adopted, they would have directed a finding that she is disabled. Pl.'s Br. in Supp. of Mot. for Summ. J. at 13, ECF No. 9. Second, she contends that the ALJ erred in strictly applying the GRID rules to her claim. The Court agrees with Plaintiff's first argument, and therefore it will not address the second issue raised by Plaintiff.

It is well settled "that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011) (citing *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994)). Rather, RFC is an administrative finding "about the ability of an individual to perform work-related activities," and it is the ALJ's duty to make this finding based on a complete review of all of the competent evidence in the record. 96-5P (S.S.A.), 1996 WL 374183, at *4 (July 2, 1996). Nevertheless, an ALJ may not simply "employ [his or] her own expertise against that of a physician who presents competent medical evidence," *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), or base his RFC finding on his "own credibility judgments, speculation or lay opinion," *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). He must, instead, point to some "contradictory medical evidence" in the record that supports his finding. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008).

In this case, although the ALJ purported to give the opinions of Dr. Kalata, Jr. and Dr. Kalata, Sr. "some weight,' he did not fully account for each of the opinions set forth in their medical source statements. Most notably, the ALJ implicitly rejected Dr. Kalata, Jr.'s opinion that Plaintiff could sit for just two hours in a workday and Dr. Kalata, Sr.'s opinion that Plaintiff could sit for just three to four hours in a workday, inasmuch as he concluded that Plaintiff could perform the demands of sedentary work on a continuing basis. *See Mason v. Shalala*, 994 F.2d

1058, 1068 (3d Cir. 1993) (citation omitted) ("A sedentary job should require no more than approximately 2 hours of standing or walking per eight-hour work day, and sitting should typically amount to six hours per eight-hour work day."). The ALJ said nothing about why he was doing so, however, or what evidence supported his finding that Plaintiff could perform sedentary work.

The Court of Appeals addressed a very similar situation in *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986) and found that remand was required. In *Doak*, the plaintiff's primary care physician opined that he was totally disabled, a state agency examiner opined that the plaintiff could perform sedentary work, and another physician opined that the plaintiff had emphysema but offered no opinion as to his ability to work. *Id.* 28-29. The ALJ found that the plaintiff could perform light work. *Id.* at 29. In reversing the ALJ's decision, the Third Circuit Court of Appeals concluded that because "[n]o physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations" so "the ALJ's conclusion that he could is not supported by substantial evidence." *Id.*

Likewise in this case, the only two medical opinions in the record, including that of Plaintiff's longtime treating physician, were contrary to the ALJ's assessment that Plaintiff could perform sedentary work. Yet, the ALJ did not attempt to reconcile his decision with these opinions by pointing to contradictory evidence in the record that supported his finding. While the ALJ was entitled to reject these opinions insofar as they were contradicted by other evidence in the record or unsupported by objective medical findings, he was required to point to some "medical evidence speaking to [Plaintiff's] functional capabilities that supports [his own] conclusion" as to Plaintiff's RFC. *Biller v. Acting Comm'r o Soc. Sec.*, 962 F. Supp. 2d 761, 778-79 (W.D. Pa. 2013). Because he failed to do so, this case must be remanded for further

consideration of Plaintiff's RFC.[4] *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (internal quotation marks omitted) (explaining that the ALJ must provide "a clear and satisfactory explication of the basis on which [his RFC assessment] rests").

## IV.    Conclusion

Under the Social Security regulations, a federal district court has three options upon review of a decision of the Commissioner denying benefits. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all of the evidence in the record, the Court finds that the ALJ failed to support her decision with substantial evidence and that the decision must be remanded to the ALJ for further consideration consistent with this Opinion. The Commissioner's decision in the present case may, however, ultimately be correct and nothing hereinabove stated should be taken to suggest that the Court has concluded otherwise.

For these reasons, Plaintiff's motion for summary judgment will be **GRANTED** insofar as it requests a remand for further consideration in accordance with sentence four of 42 U.S.C. §

---

4.    The Court recognizes that there is some disagreement among District Judges in this Circuit as to whether an ALJ must support his RFC finding with a medical assessment from a physician. *Compare Biller*, 962 F. Supp. 2d at 778 (Conti, J.) (internal citation and quotation marks omitted) ("Rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant.") *with Doty v. Colvin*, Civ. No. 13–80–J, 2014 WL 29036, *1 n. 1 (W.D. Pa. Jan.2, 2014) (Bloch, J.) ("[R]ejection of even a treating physician's opinion does not require reliance on another opinion. Such an opinion can be rejected on the basis of contradictory medical evidence, not just contrary opinions."). The Court in *Doty* specifically rejected a reading of *Doak*, 790 F.2d 26 that would "prohibit the ALJ from making an RFC assessment even if no doctor has specifically made the same findings and even if the only medical opinion in the record is to the contrary." *Doty*, 2014 WL 29036, *1 n.1. This Court need not resolve which of these cases represents the correct view, since not only did the ALJ not point to a contrary medical opinion, but he did not point to any contrary evidence whatsoever suggesting that Plaintiff could perform the demands of sedentary work.

405(g); Defendant's motion for summary judgment will be **DENIED**; and the decision of the ALJ will be **VACATED** and **REMANDED** for further consideration not inconsistent with this Opinion. An appropriate order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ANNA MARIE VON,** | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | )  **2:14-cv-00177-TFM** |
|  | ) |
| **CAROLYN W. COLVIN**, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| **Defendant.** | ) |

## <u>ORDER</u>

**AND NOW**, this 10th day of February, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and the decision of the ALJ is **VACATED** and **REMANDED** for further consideration not inconsistent with the foregoing Memorandum Opinion.

BY THE COURT:

s/ Terrence F. McVerry
Senior United States District Judge

cc:   R. Christopher Brode, Esq.
      Email: brodelaw@hotmail.com

      Marshall J. Piccinini, Esq.
      Email: marshall.piccinini@usdoj.gov